FILED

1  James S. Monroe (SBN 102328)
   jim@monroe-law.com
2  MONROE LAW GROUP
   101 California Street, Suite 2450
3  San Francisco, CA 94111
   Telephone: (415) 869-1575
4  Facsimile: (415) 723-7423

5  Attorneys for Plaintiff
   AMALGAMATED BANK
6

7

2009 JUN -1  AM 11: 03

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

8               UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11

12  AMALGAMATED BANK, a New York
    banking corporation,

13                      Plaintiff,

14        v.

15  EV RENTAL CARS, LLC, a California
    limited liability company;
16  JEFFREY S. PINK, aka JEFFREY
    PINK, an individual; LAURIE G.
17  PINK, aka LAURIE PINK, an
    individual; and  LARRY JONATHAN
18  PINK, aka LARRY PINK, an
    individual,
19
                      Defendants.
20

21

22

23

No. **CV09-3885** DSF-AJW

**COMPLAINT FOR:**

1.  BREACH OF WRITTEN
    AGREEMENTS;

2.  FORECLOSURE OF DEEDS OF
    TRUST;

3.  FORECLOSURE OF SECURITY
    INTERESTS;

4.  CLAIM AND DELIVERY;

5.  INTENTIONAL
    MISREPRESENTATION AND
    FRAUDULENT CONCEALMENT AND
    SUPPRESSION OF FACTS; AND

6.  NEGLIGENT MISREPRESENTATION

24

25

26

27

28

Plaintiff complains and alleges as follows:

**FIRST CLAIM FOR RELIEF**
**(Breach of Written Agreements Against Defendant**
**EV Rental Cars, LLC)**

1.    Plaintiff is a banking corporation chartered under the laws of the State of New York, and having its principal place of business in the State of New York.

2.    Plaintiff is informed and believes and thereon alleges that defendant EV Rental Cars, LLC ("EV") is a California limited liability company with its principal place of business in Los Angeles, California, and that EV's sole owner and member is EV Transportation, Inc., a corporation incorporated under the laws of the State of Nevada and having its principal place of business in Los Angeles, California.

3.    Plaintiff is informed and believes and thereon alleges that defendants Jeffrey S. Pink, aka Jeffrey Pink ("Jeffrey Pink") and Laurie G. Pink, aka Laurie Pink ("Laurie Pink," and together with Jeffrey Pink, collectively, the "Pinks") are both citizens of the State of California and reside in Calabasas, California.

4.    Plaintiff is informed and believes and thereon alleges that defendant Larry Jonathan Pink, aka Larry Pink ("Larry Pink") is a citizen of the State of California and resides in Santa Monica, California.

5.    This court has original jurisdiction of this matter under 28 U.S.C. § 1332 in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of interest and costs, $75,000.

COMPLAINT

6.   Venue is proper in this district in that all defendants reside in this State and at least one defendant resides in this district.   In addition, venue is proper in this district because a substantial part of the events or omissions giving rise to the plaintiff's claims occurred in this district.

7.   Plaintiff is informed and believes and thereon alleges that each defendant named in this complaint was at all times herein mentioned the agent and/or employee of each of the other defendants herein, and was at all times acting within the scope and course of said agency and/or employment.

8.   On or about April 18, 2006, EV, for value received, made, executed and delivered to plaintiff a certain Revolving (Grid) Promissory Note dated as of April 10, 2006 (the "Note"), in the principal sum of $11,000,000.00.   A true and correct copy of the Note is attached hereto as Exhibit 1 and incorporated herein by this reference.   In connection therewith and as part of the same transaction (the "Loan"), EV and plaintiff executed a certain letter agreement, dated as of April 10, 2006 (the "Letter Agreement"), a true and correct copy of which is attached hereto as Exhibit 2 and incorporated herein by this reference.

9.   Plaintiff is now, and at all times relevant to this action was, the lawful owner and holder of the Note.

10.   Plaintiff and EV executed Amendment One to the Note and Letter Agreement, dated as of February 1, 2007, which amended certain terms of the Note and Letter Agreement as provided therein, a true and correct copy of which is attached hereto as Exhibit 3 and incorporated herein by this reference ("Amendment 1").

–3–

11.   On or about April 2, 2007, EV and plaintiff executed an extension agreement regarding the Loan, which, *inter alia,* extended the maturity date of the Loan to April 30, 2007, a true and correct copy of which is attached hereto as Exhibit 4 and incorporated herein by this reference ("Extension No. 1").

12.   On or about May 2, 2007, EV and plaintiff executed a further extension agreement regarding the Loan, which, *inter alia,* extended the maturity date of the Loan to May 31, 2007, a true and correct copy of which is attached hereto as Exhibit 5 and incorporated herein by this reference ("Extension No. 2").

13.   In connection with the Loan, Amendment No. 1, and the Forbearance Agreements that were entered into (described below), and as a material inducement to plaintiff to enter into said agreements, EV signed and delivered to plaintiff certain written instruments whereby EV granted plaintiff security interests in the collateral described therein (the "Collateral") to secure repayment of the Loan and EV's obligations under the agreements executed in connection therewith, including but not limited to the following: (a) an Accounts Receivable Continuing Security Agreement dated March 26, 2004 (the "AR Security Agreement"); (b) an Inventory Rider (Rider A) to Accounts Receivable Continuing Security Agreement also dated March 26, 2004, granting a lien on, *inter alia,* the EV's personal property in respect of the EV's Toyota Program Vehicles, and an Inventory Rider (Rider A) to Accounts Receivable Continuing Security Agreement dated August 11, 2004, granting a lien on, *inter alia,* the EV's personal property in respect of EV's Honda Program Vehicles (collectively, the

COMPLAINT

"Inventory Riders"); (c) a Security Agreement (with Assignment of Rents and Leases) dated as of February 15, 2007 (the "2007 Security Agreement"); (d) a Pledge and Security Agreement dated as of January 9, 2008 (the "2008 Security Agreement"); and a First Lien Intellectual Property Security Agreement dated as of January 10, 2008 (the "IP Security Agreement"). True and correct copies of the AR Security Agreement, Inventory Riders, 2007 Security Agreement, 2008 Security Agreement (excluding the listed schedules and exhibits thereto), and IP Security Agreement (collectively, the "Security Agreements") are attached hereto, respectively, as Exhibits 6 through 10, inclusive, and are incorporated herein by this reference. Exhibits 1 through 10, inclusive, are hereinafter collectively referred to as the "Loan Agreement."

14. The Note matured on May 31, 2007 and at all times since then EV has been in default of the repayment terms of the Note and Loan Agreement and certain other covenants and representations of the Loan Agreement, including, but not limited to: (a) the breach of the negative pledge provisions and representations as against no other liens against the Collateral for the Loan as a result of EV obtaining, without the knowledge or consent of plaintiff, a loan for $1 million from Vineyard Bank in January 2006, secured by substantially all of EV's assets; (b) the failure to deposit the required $1,200 per vehicle purchased by EV as additional collateral for the Loan; (c) the failure to provide required periodic financial reporting and year end audited financials; (d) the decline in the value of the Collateral below the outstanding Loan balance; and (e) plaintiff is informed and believes and

thereon alleges that during 2005, 2006 and 2007, Jeffrey Pink (who was the majority owner and Manager/CEO of EV prior to EV's merger in July 2008, whereby EV became a wholly owned subsidiary of EV Transportation Inc., a Nevada corporation, formerly known as IMMS, Inc.), misappropriated and diverted substantial amounts of cash from EV's business, including proceeds of the Loan which were to be used solely for EV's business, for his personal use and to maintain his extravagant lifestyle, without any legitimate business justification.

15.  Thereafter, three (3) written forbearance agreements were entered into among the parties regarding the Loan Agreement and the Guaranty thereof (defined below), as follows: (a) a certain Forbearance and Amendment Agreement, dated September 12, 2007, executed by EV, Jeffrey Pink, and plaintiff (the "First Forbearance Agreement"); (b) a certain Forbearance Agreement, dated as of February 8, 2008, executed by EV, Jeffrey Pink, and plaintiff (the "Second Forbearance Agreement"), which superseded the First Forbearance Agreement; and (c) a certain Third Forbearance Agreement, dated as of July 9, 2008, executed by EV, the Pinks, and plaintiff (the "Third Forbearance Agreement"), which superseded the Second Forbearance Agreement.  True and correct copies of the First, Second and Third Forbearance Agreements (collectively, the "Forbearance Agreements") are attached hereto, respectively, as Exhibits 11 through 13, inclusive, and are incorporated herein by this reference.

/ / /

/ / /

16.   Plaintiff has duly performed all of the terms, conditions and obligations on its part to be performed pursuant to the Loan Agreement and Forbearance Agreements.

17.   The Forbearance Period (as defined in the Third Forbearance Agreement) terminated by the express terms of the Third Forbearance Agreement as of no later than October 31, 2008 due to (a) the failure of the EV to consummate and receive the proceeds of the New Financing (as defined in the Third Forbearance Agreement) and remit to plaintiff all amounts owing to plaintiff under the Third Forbearance Agreement from the proceeds of the New Financing by October 31, 2008, as required by Section 10(n) of the Third Forbearance Agreement; and (b) the failure of the Final Vehicle Liquidation Date (as defined in the Third Forbearance Agreement) to occur by October 31, 2008, as required by Section 10(o) of the Third Forbearance Agreement.  As a result of the foregoing, the Existing Defaults (as defined in the Third Forbearance Agreement) were revived, entitling plaintiff to commence immediately to exercise, without further notice or demand, except as may be required pursuant to state law, any and all rights and remedies under the Loan Agreement, the Forbearance Agreements, the Guaranty (defined below), the Deeds of Trust (defined below), the Guarantor Security Agreement (defined below), the Guarantor Pledge (defined below) and applicable law. Based upon the foregoing and for the avoidance of doubt, on January 20, 2009, plaintiff gave EV and the Pinks a written notice that the Forbearance Period under the Third Forbearance Agreement had so terminated.

18.   Based upon the foregoing, there is presently due, owing and unpaid from EV to plaintiff under the terms of the Loan Agreement and Third Forbearance Agreement, the principal sum of $4,798,128.96, plus interest thereon as provided under the Loan Agreement and Third Forbearance Agreement from May 30, 2009 at the rate of 4.75% per annum in excess of the Bank's Base Rate (as defined in the Loan Agreement), as the same changes from time to time (the "Indebtedness").

19.   The Loan Agreement and Third Forbearance Agreement provide that EV will pay all expenses and costs incurred by plaintiff in enforcing said agreements, including but not limited to plaintiff's attorneys' fees.  Plaintiff has engaged counsel to represent it in enforcing said agreements and has incurred and will continue to incur attorneys' fees in the prosecution of this action.

### SECOND CLAIM FOR RELIEF
**(Judicial Foreclosure of Security Interest
Against Defendant EV Rental Cars, LLC)**

20.   Plaintiff realleges the allegations set forth in paragraphs 1 through 19, inclusive, and incorporates the same herein by reference as though fully set forth.

21.   Financing Statements were filed by plaintiff in connection with the perfection of the security interests in the Collateral that EV granted to plaintiff by the Security Agreements, in the Office of the Secretary of State of California on September 21, 2007 and January 11, 2008.  True and correct copies of said financing statements are attached hereto, respectively, as Exhibits 14 and 15 and are incorporated herein by this reference.

COMPLAINT

22.   As a result of EV's defaults in its obligations as hereinabove set forth, plaintiff is entitled to enforce its security interest by judicial foreclosure of all of EV's rights in the Collateral through public sale thereof by the proper judicial officer.

### THIRD CLAIM FOR RELIEF
**(Claim and Delivery Against Defendant
EV Rental Cars, LLC)**

23.   Plaintiff realleges the allegations set forth in paragraphs 1 through 22, inclusive, and incorporates the same herein by reference as though fully set forth.

24.   Plaintiff is informed and believes and thereon alleges that the Collateral is in the possession of EV.

25.   EV has failed and refused, and continues to fail and refuse to relinquish the Collateral to Plaintiff, although, as a consequence of the hereinabove described breaches of the Loan Agreement, said Collateral is wrongfully retained thereby.

26.   By virtue of EV's wrongful possession of the Collateral, plaintiff is entitled to and demands immediate possession thereof.

### FOURTH CLAIM FOR RELIEF
**(Judicial Foreclosure of Deeds of Trust
Against Defendants Jeffrey and Laurie Pink)**

27.   Plaintiff realleges the allegations set forth in paragraphs 1 through 19, inclusive, and incorporates the same herein by reference as though fully set forth.

28.   On or about November 14, 2007, the Jeffrey Pink, for valuable consideration and as part of the Second Forbearance Agreement, made, executed, and delivered to plaintiff an instrument in writing whereby he guaranteed payment to plaintiff of all

–9–

amounts owing under the Loan Agreement and Forbearance Agreements. A true and correct copy of said Absolute, Unlimited and Continuing Guaranty (the "Guaranty") is attached hereto as Exhibit 16 and incorporated herein by this reference.

29.  In reliance on the Guaranty, plaintiff entered into the Second Forbearance Agreement with EV and Jeffrey Pink.

30.  To secure payment of the Guaranty, and as part of the same transaction, Jeffrey Pink and Laurie Pink (collectively, the "Pinks") made, executed and delivered to plaintiff that certain Deed of Trust, Security Agreement and Fixture Filing with Assignment of Rents and Leases, dated as of December 17, 2007 (the "12/17/07 Deed of Trust"), against the residential real property commonly known as 23845 Park Belmonte, Calabasas, California 91302, Assessor's Parcel Number 2069-005-060, and legally described in Exhibit 17 hereof (the "Real Property").  The 12/17/07 Deed of Trust, a true and correct copy of which is attached hereto as Exhibit 17 and incorporated herein by this reference, was recorded on December 21, 2007, as Instrument Number 2007-2815970, of Official Records of Los Angeles County, California.

31.  On or about October 13, 2005, the Pinks, for value received, made, executed and delivered to plaintiff, formerly known as Amalgamated Bank of New York, a certain Homeowner Consumer Loan Note (the "Pink Note"), in the principal sum of $200,000.00.  A true and correct copy of the Pink Note is attached hereto as Exhibit 18 and incorporated herein by this reference.

32.  To secure payment of the Pink Note, and as part of the same transaction, the Pinks executed and delivered to plaintiff a

certain Mortgage, dated as of October 11, 2005, against the Real Property (the "Mortgage").  The Mortgage, a true and correct copy of which is attached hereto as Exhibit 19 and incorporated herein by this reference, was recorded on March 6, 2007, as Instrument No. 2007-0488918, of Official Records of Los Angeles County, California.

33.   To secure payment of the Pink Note and the Guaranty, the Pinks made, executed and delivered to plaintiff a certain Amended and Restated Deed of Trust, Security Agreement and Fixture Filing with Assignment of Rents and Leases, dated as of December 6, 2007, against the Real Property (the "12/6/07 Deed of Trust"), which amended, restated and replaced the Mortgage in its entirety.  The 12/6/07 Deed of Trust, a true and correct copy of which is attached hereto as Exhibit 20 and incorporated herein by this reference, was recorded on December 17, 2007, as Instrument No. 2007-2765304, of Official Records of Los Angeles County, California.

34.   The 12/17/07 Deed of Trust and the 12/6/07 Deed of Trust are hereinafter referred to collectively as the "Deeds of Trust."

35.   Plaintiff is now, and at all times relevant to this action was, the lawful owner and holder of the Pink Note, the Guaranty and the beneficial interest under the Deed of Trusts.

36.   Plaintiff has duly performed all of the terms, conditions and obligations on its part to be performed pursuant to the Loan Agreement, the Forbearance Agreements, the Guaranty, the Pink Note, and the Deeds of Trust.

37.   There is presently due, owing and unpaid from Jeffrey Pink to plaintiff under the terms of the Guaranty, the principal

COMPLAINT

sum of $4,798,128.96, plus interest thereon as provided under the Loan Agreement and Third Forbearance Agreement from May 30, 2009 at the rate of 4.75% per annum in excess of the Bank's Base Rate (as defined in the Loan Agreement), as the same changes from time to time (the "Indebtedness"). Jeffrey Pink's default under the Guaranty is also a default under the terms of the Pink Note and 12/6/07 Deed of Trust.

38.   There is presently due, owing and unpaid from the Pinks on the Pink Note: (a) the principal sum of $142,603.28; (b) accrued and unpaid interest from December 31, 2008, at the rate of 6.50% per annum, totaling $3,783.87 as of May 28, 2009; and (c) late charges as provided in the Pink Note in the sum of $90.83 as of May 28, 2009 (the "Pink Note Indebtedness").

39.   Plaintiff may hereafter be required to expend sums to protect its security in the Real Property. In the Deed of Trust, the Trustors agreed to pay any such sums expended by plaintiff. Plaintiff will amend this complaint to allege the nature and amounts of such sums if plaintiff is required to make such expenditures.

40.   As a result of the defaults of EV and the Pinks in their obligations as hereinabove set forth, plaintiff is entitled to enforce its Deeds of Trust against the Real Property by judicial foreclosure of all of the Pinks' rights in the Real Property through public sale by the proper judicial officer.

41.   The Guaranty, Pink Note, and Deeds of Trust provide that the Pinks will pay all expenses and costs incurred by plaintiff in enforcing said agreements, including but not limited to plaintiff's

COMPLAINT

attorneys' fees, and that these charges would also become a lien against the Real Property. Because of the above-described defaults, it has become necessary for plaintiff to employ counsel to commence and prosecute this foreclosure action.  The reasonable value of the services of counsel in this action shall be proved at or after the trial in this action.

### FIFTH CLAIM FOR RELIEF
(Judicial Foreclosure of Security Interest
Against Defendant Jeffrey Pink)

42.  Plaintiff realleges the allegations set forth in paragraphs 1 through19, inclusive, and 28 through 41, inclusive, and incorporates the same herein by reference as though fully set forth.

43.  As a material inducement to plaintiff to enter into the Second Forbearance Agreement with EV and Jeffrey Pink, Jeffrey Pink signed and delivered to plaintiff that certain Accounts Receivable Continuing Security Agreement dated on or about January 9, 2008, including an Inventory Rider (Rider A), an Equipment Rider (Rider B), and an Addendum thereto (the "Guarantor Security Agreement"), whereby said defendant granted plaintiff a security interest in the collateral described in the Security Agreement as security for his obligations under the Guaranty and Forbearance Agreements.  A true and correct copy of the Guarantor Security Agreement is attached hereto as Exhibit 21 and incorporated herein by this reference.

44.  A financing statement was filed in connection with the perfection of the security interest under the Guarantor Security Agreement on or about February 8, 2008, in the Office of the Secretary of State of California.  A true and correct copy of said

COMPLAINT

financing statement is attached hereto as <u>Exhibit 22</u> and incorporated herein by this reference.

45.   As a material inducement to plaintiff to enter into the Third Forbearance Agreement with EV and Jeffrey Pink, Jeffrey Pink signed and delivered to plaintiff that certain Stock Pledge and Security Agreement dated as of July 24, 2008 (the "<u>Guarantor Stock Pledge</u>"), whereby said defendant granted plaintiff a security interest in the collateral described in the Guarantor Stock Pledge as security for his obligations under the Guaranty.  A true and correct copy of said Guarantor Stock Pledge is attached hereto as <u>Exhibit 23</u> and incorporated herein by this reference.  In addition to filing the financing statement described above, plaintiff perfected its security interest in the shares of stock described in the Guarantor Stock Pledge by taking possession of the original share certificates.

46.   The collateral described in the Guarantor Security Agreement and the Guarantor Stock Pledge is hereinafter referred to collectively as the "<u>Guarantor Collateral</u>."

47.   Plaintiff has duly performed all of the terms, conditions and obligations on its part to be performed pursuant to the Guarantor Security Agreement and Guarantor Stock Pledge.

48.   As a result of Jeffrey Pink's defaults in his obligations as hereinabove set forth, plaintiff is entitled to enforce its security interest by judicial foreclosure of all of his rights in the Guarantor Collateral through public sale thereof by the proper judicial officer.

-14-

**SIXTH CLAIM FOR RELIEF**
**(Claim and Delivery Against Defendant Jeffrey Pink)**

49.   Plaintiff realleges the allegations set forth in paragraphs 1 through19, inclusive, and 28 through 48, inclusive, and incorporates the same herein by reference as though fully set forth.

50.   Plaintiff is informed and believes and thereon alleges that, except for the collateral described in the Guarantor Stock Pledge, the Guarantor Collateral is in the possession of Jeffrey Pink.

51.   Jeffrey Pink has failed and refused, and continues to fail and refuse to relinquish the Guarantor Collateral to Plaintiff, although, as a consequence of the hereinabove described breaches of the Guaranty, Third Forbearance Agreement, Guarantor Security Agreement, and Guarantor Pledge, said Guarantor Collateral is wrongfully retained thereby.

52.   By virtue of Jeffrey Pink's wrongful possession of the Guarantor Collateral, plaintiff is entitled to and demands immediate possession thereof.

**SEVENTH CLAIM FOR RELIEF**
**(Intentional Misrepresentation, Fraudulent Concealment and Suppression of Facts Against Defendants Jeffrey Pink, Larry Pink, and EV Rental Cars, LLC)**

53.   Plaintiff realleges the allegations set forth in paragraphs 1 through 19, inclusive, and 28 through 41, inclusive, and incorporates the same herein by reference as though fully set forth.

54.   Prior to plaintiff making the above-described $11,000,000.00 Loan to EV, evidenced by the Note which is the

COMPLAINT

subject of this action (Exhibit 1), plaintiff, on or about March 15, 2004, had made an $8,000,000.00 revolving credit facility available to EV which, after being renewed and briefly extended, was scheduled to mature on March 31, 2006. In or about March 2006, Jeffrey Pink and Larry Pink requested that plaintiff renew and increase this outstanding credit facility to $11,000,000.00. In order to induce plaintiff to do so, Jeffrey Pink and Larry Pink, in or about March 2006, provided plaintiff with copies of EV's compiled financial statements for the fiscal year ending December 31, 2004 (compiled by a CPA firm), management prepared financial statements by Jeffrey and Larry Pink for the fiscal year ending December 31, 2005, true and correct copies of which are attached hereto as Exhibit 24 and incorporated herein by reference (the "12/31/05 Financials"), and management prepared projections by Jeffrey Pink and Larry Pink for fiscal years 2006 and 2007 (the "Projections"). In addition and to further induce plaintiff to make the Loan, Jeffrey Pink provided the Bank with his personal financial statement, dated March 7, 2006 (the "Personal Financial Statement"), which is incorporated herein by reference but not attached hereto to avoid the disclosure of personal information.

55. Plaintiff is informed and believes and thereon alleges that at the time of each of the events alleged herein and at all times material to the allegations contained herein, Jeffrey Pink was the majority owner and the Manager/CEO of EV, Larry Pink was an owner and the Director of Finance for EV, both Larry Pink and Jeffrey Pink were fully knowledgeable of the financial condition and operational performance of EV, and both received substantial

incomes as managers and owners of EV and devoted substantial time and attention to EV's business.

56.   In the 12/31/05 Financials, Jeffrey Pink, Larry Pink and EV (hereinafter, the "Defendants") made the following false and fraudulent representations to plaintiff concerning the financial condition of EV: (a) that EV's Total Net Revenue for 2005 was $3,426,857; (b) that EV had Net Income for 2005 in the amount of $296,688; and (c) that EV had government grant income of $999,004 in 2005.   Each of these representations was false at the time that the Defendants made them, and at all times herein mentioned, and plaintiff is informed and believes, based upon its subsequent investigation into this matter in August and September of 2007, and thereon alleges, that in fact and in truth: (a) EV's Total Net Revenue for 2005 was no more than $2,278,153; (b) that instead of having Net Income for 2005, EV had a Net Loss of at least $557,988; and (c) that EV's government grant income for 2005 was no more than $532,652.

57.   In the Projections for the balance of 2006 and for 2007, Defendants made the following false and fraudulent representations (which they represented to the Bank to be conservative) regarding the anticipated financial performance of EV: (a) that projected Gross Revenue was $5,700,000 for 2006 and $12,600,000 for 2007 (excluding government grant income); (b) that projected Net Income was $900,000 for 2006 and $3,400,000 for 2007 (excluding government grant income); and (c) that projected government grant income was $2,000,000 for 2006 and $6,000,000 for 2007.   Each of these representations made by Defendants was in fact false at the time

said representations were made.  Plaintiff is informed and believes, based upon its subsequent investigation into this matter in August and September of 2007, and thereon alleges, that the true facts were that at the time of the Loan application, EV's operations were unprofitable, the company was insolvent and teetering on the edge of bankruptcy and was being artificially maintained by loans from plaintiff and Vineyard Bank (discussed below) and government grants which were expiring.  Contrary to the Projections, plaintiff is informed and believes and thereon alleges that in fact and in truth: (a) EV's Gross Revenue was no more than $4,312,328 in 2006 and $3,806,565 in 2007; (b) EV had a Net Loss of at least $1,551,935 in 2006 and $3,314,563 in 2007; and (c) EV's government grant income was no more than $52,169 in 2006 and approximately $35,000 in 2007.

58.  Defendants' purpose in presenting the greatly exaggerated and false Projections was to portray EV's business as solvent and profitable.

59.  At the time of EV's application to plaintiff for the Loan, Defendants failed to disclose and concealed from plaintiff the fact that EV had obtained an SBA guaranteed loan from Vineyard Bank, on or about January 26, 2006, in the amount of approximately $975,000 which was secured by (a) a security interest granted by EV under Division 9 of the California Commercial Code against substantially all of EV's assets, and (b) a deed of trust encumbering the residence of Jeffrey and Laurie Pink.

60.  In his Personal Financial Statement presented to the Bank in support of the Loan application and his (at that time) limited

$2,000,000 guaranty thereof which was executed in 2006 in connection with the Loan (subsequently superseded by the unlimited Guaranty attached hereto as Exhibit 16), Jeffrey Pink made the following false and fraudulent representations to plaintiff concerning his financial condition: (a) that he had personal funds in bank accounts totaling $785,000; (b) that he owned real estate worth $2,300,000 (his residence), with encumbrances against it totaling no more than $1,200,000; (c) that the net worth of his ownership interest in EV was $7,465,000; (d) and that his total net worth was $9,685,000.  Each of these representations made by Jeffrey Pink was in fact false at the time said representations were made.  Plaintiff is informed and believes, based upon its subsequent investigation into this matter in August and September of 2007, and thereon alleges, that the true facts were that as of the date of his Personal Financial Statement: (a) Jeffrey Pink had at most $85,000 of personal cash in deposit accounts, with the balance representing proceeds of the SBA loan and proceeds of plaintiff's loan to EV that were EV's funds, not Jeffrey Pinks; (b) the value of Jeffrey Pink's interest in the real estate listed on the Personal Financial Statement was at most ½ the listed value since he held title to said property as a joint tenant with his spouse (Laurie Pink), and the liens against said property were understated by at least $1,000,000 (since Jeffrey Pink and Laurie Pink had executed an undisclosed deed of trust against said property on or about January 16, 2006 to secure his guaranty of the Vineyard Bank loan to EV); (c) the net worth of EV was $0.00 since EV, based upon its actual financial condition, was unprofitable,

insolvent, and unlikely to continue as a going concern; and (d) Jeffrey Pink was insolvent.

61.   In his Personal Financial Statement, Jeffrey Pink expressly represented, *inter alia,* the following to plaintiff: "**Bank's Reliance.** I understand that AB [Amalgamated Bank], its successors and/or assigns will rely on the information in this Statement (including any statement made as to ownership of property) in deciding whether to grant or continue Credit. **Information True and Complete.**   I represent and warrant (a) that **the information provided in this Statement is true and complete, is not misleading and has no material omissions, as of the date of this Statement (except when any other date may be specifically noted, and, as to such information, this warranty is as of that date)** and (b) that AB may consider this Statement as continuing to be materially true and correct until a written notice of a change is given to AB by me (emphasis in original)."   In addition, his Personal Financial Statement contained the following clear admonition: "**False Statements.** It is a federal crime punishable by fine or imprisonment, or both, knowingly to make any false statement in the Statement to AB in connection with any Credit or application for Credit (Title 18, United States Code) (emphasis in original)."

62.   On or about February 27, 2006, Larry Pink and Jeffrey Pink falsely and fraudulently represented to plaintiff that Jeffrey Pink had used $278,868.36 of his personal funds to purchase certain vehicles for EV and requested an advance on the $8,000,000 revolving credit facility in that amount to reimburse Jeffrey Pink,

which the Bank permitted.  Thereafter, on or about May 22, 2006, Larry Pink and Jeffrey Pink falsely and fraudulently represented to plaintiff that Jeffrey Pink had used $126,716 of his personal funds to purchase certain additional vehicles for EV and requested an advance on the Loan in that amount to reimburse Jeffrey Pink, which the Bank permitted.  Each of these representations was false at the time that it was made, and at all times herein mentioned, and plaintiff is informed and believes, based upon its subsequent investigation into this matter in August and September 2007, and thereon alleges, that in fact and in truth that funds from the SBA guaranteed loan from Vineyard Bank were used to purchase the vehicles, not Jeffrey Pink's funds.

63.  The misrepresentations and fraudulent concealment and suppression of facts herein alleged to have been made by Defendants were made with Defendants' knowledge of their falsity and with the intent to defraud and deceive plaintiff and to induce plaintiff in reliance therein to (a) act in the manner herein alleged, and (b) make the Loan to EV; knowing that their financing request would have been denied by plaintiff had they provided an accurate and truthful picture of EV's financial condition.  Plaintiff is informed and believes and thereon alleges that it was critically important to Jeffrey Pink and Larry Pink that plaintiff's Loan to EV be both renewed and increased as requested in order for them to maintain the large distributions that they withdrew from EV and to preserve their extravagant personal lifestyles.

64.  Plaintiff, at the time these misrepresentations and fraudulent concealment and suppression of facts occurred, and at

COMPLAINT

the time that Plaintiff took the actions herein alleged, was (a) ignorant of the falsity of Defendants' representations and believed them to be true, and (b) ignorant of the existence of the facts which Defendants suppressed and failed to disclose.

65.   In reliance on said misrepresentations and failures to disclose and suppression of facts, plaintiff was induced to act in the manner herein alleged and to make the Loan to EV requested by Defendants.   Had plaintiff known the actual facts, it would not have either renewed or increased the Loan amount and instead would have called the Loan.   Plaintiff's reliance on Defendants' misrepresentations and failures to disclose and suppression of facts was reasonable because plaintiff had no knowledge and no way of knowing the true facts regarding EV's and Jeffrey Pink's financial condition and it was not until in or about August 2007, after the Loan matured and went into payment default, that plaintiff initially became aware of the same.

66.   Plaintiff is informed and believes and thereon alleges that had it not renewed and increased the Loan to EV based upon Defendants' misrepresentations and fraudulent concealment that plaintiff would have been able to recover the $8,000,000 balance of the Loan at that time from, *inter alia,* the liquidation of EV's vehicle fleet (with a value of approximately $7,000,000 or more), the application of EV's liquid assets of approximately $1,000,000 or so, the collection of vehicle rental income during the vehicle liquidation process, and the liquidation of the Pinks' residence.

67.   As a direct and proximate result of Defendants' fraud and deceit and the facts herein alleged, plaintiff has been damaged in

the principal sum of $4,798,128.96, plus interest thereon as provided under the Loan Agreement and Third Forbearance Agreement from May 30, 2009 at the rate of 4.75% per annum in excess of the Bank's Base Rate (as defined in the Loan Agreement), as the same changes from time to time, plus attorneys' fees and costs incurred herein.

68.   The aforementioned conduct of Defendants was an intentional misrepresentation, deceit or concealment of material facts known to Defendants with the intention on the part of Defendants to defraud the plaintiff and of thereby depriving plaintiff of property or legal rights or otherwise causing injury and was despicable conduct, proscribed by 18 U.S.C. § 1344 as bank fraud and punishable by fine or imprisonment, or both, that subjected plaintiff to a cruel and unjust hardship in conscious disregard of plaintiff's rights, so as to justify an award of exemplary and punitive damages in the minimal amount of $1,000,000.

## EIGHTH CLAIM FOR RELIEF
### (Negligent Misrepresentation Against Defendants Jeffrey Pink, Larry Pink and EV Rental Cars, LLC)

69.   Plaintiff realleges the allegations set forth in paragraphs 1 through 19, inclusive, paragraphs 28 through 41, inclusive, paragraphs 54 through 62, inclusive, and paragraphs 66 and 67, and incorporates the same herein by reference as though fully set forth.

70.   When the Defendants made the representations set forth above, they had no reasonable grounds for believing that said representations were true in that plaintiff is informed and believes and thereon alleges that the Defendants did not have

COMPLAINT

adequate or accurate information concerning the subject matter of said representations and that Defendants were aware that without such information they could not accurately make the representations herein alleged.

71.  At the time of the making of said representations, and at all times thereafter, the Defendants concealed from plaintiff their lack of information and their consequent inability to make the alleged representations accurately.

72.  The representations herein alleged to have been made by Defendants were made thereby with the intent to induce plaintiff in reliance thereon to act in the manner herein alleged and to make the Loan to EV.

73.  Plaintiff, at the time these misrepresentations occurred, and at the time that Plaintiff took the actions herein alleged, was ignorant of the falsity of Defendants' representations and believed them to be true.

74.  In reliance on said misrepresentations, plaintiff was induced to act in the manner herein alleged and to make the Loan to EV requested by Defendants.  Had plaintiff known the actual facts, it would not have either renewed or increased the Loan amount and instead would have called the Loan.  Plaintiff's reliance on Defendants' misrepresentations was reasonable because plaintiff had no knowledge and no way of knowing the true facts regarding EV's and Jeffrey Pink's financial condition and it was not until in or about August 2007, after the Loan matured and went into payment default, that plaintiff initially became aware of the same.

WHEREFORE, Plaintiff prays for judgment as follows:

<u>FIRST CLAIM FOR RELIEF</u>

1.   For the principal sum of $4,798,128.96, plus interest thereon from May 30, 2009 as provided under the Loan Agreement and Third Forbearance Agreement at the rate of 4.75% per annum in excess of the Bank's Base Rate (as defined in the Loan Agreement), as the same changes from time to time;

2.   For collection, repossession, repair, storage and sale costs in an amount to be proven at the time of trial;

3.   For reasonable attorneys' fees;

<u>SECOND CLAIM FOR RELIEF</u>

4.   For an order directing public sale of the Collateral to foreclose all of EV's rights therein and to apply the proceeds in the following order:

(a)   the costs of taking, keeping and selling the Collateral;

(b)   the costs of suit and attorneys' fees incurred herein as may be awarded by the Court;

(c)   to satisfaction of damages and interest thereon under the Note;

(d)   to the satisfaction of the indebtedness secured by any subordinate security interest in the Collateral if written notification of demand is therefore received before distribution of the proceeds is completed; and

(e)   to the Borrower as to any surplus thereafter.

COMPLAINT

### THIRD CLAIM FOR RELIEF

5.    For an order of this court commanding EV to give up and deliver possession of the Collateral to plaintiff.

### FOURTH CLAIM FOR RELIEF

6.    That the court enter a money judgment against the Pinks for:

(a)  The principal sum of $4,798,128.96, plus interest thereon as provided under the Loan Agreement and Third Forbearance Agreement from May 30, 2009 to the date of judgment at the rate of 4.75% per annum in excess of the Bank's Base Rate (as defined in the Loan Agreement), as the same changes from time to time;

(b)  The principal sum of $142,603.28, plus accrued and unpaid interest thereon from December 31, 2008 to the date of judgment at the rate of 6.50% per annum, and late charges according to proof, in connection with the Pink Note and the 12/6/07 Deed of Trust;

(c)  Reasonable attorneys' fees; and

(d) Additional sums, if any, that plaintiff hereafter expends to protect its security interest in the Real Property, together with interest according to proof.

7.    That the court order, adjudge and decree that the Deeds of Trust be foreclosed; that the Real Property be sold according to law by the county sheriff or a court-appointed receiver; that the proceeds of the sale be applied in payment of the amounts due plaintiff; and that the Pinks, and all persons claiming under them after the execution of the Deeds of Trust, as lien claimants, judgment creditors, claimants under a junior deed of trust,

COMPLAINT

purchasers, encumbrancers, or otherwise, be barred and foreclosed from all rights, claims, interests, or equity of redemption in the Real Property when time for redemption has elapsed.

8.   That the court award plaintiff judgment and execution against Jeffrey Pink for any deficiency that may remain on the Guaranty after applying all proceeds of sale of the Real Property duly applicable to satisfy the amounts found due by the court on the Guaranty under paragraph 6 of this prayer for judgment.

9.   That the court award plaintiff judgment and execution against the Pinks for any deficiency that may remain on the Pink Note after applying all proceeds of sale of the Real Property duly applicable to satisfy the amounts found due by the court on the Pink Note under paragraph 6 of this prayer for judgment.

10.   That the court order, adjudge, and decree that plaintiff or any other party to this action may purchase the Real Property at the foreclosure sale, that when the time for redemption has elapsed the sheriff or receiver execute a deed to the purchaser(s) of the Real Property at the sale, and that the purchaser(s) be given possession of the Real Property on production of the sheriff's or receiver's deed.

<u>FIFTH CLAIM FOR RELIEF</u>

11.   For an order directing public sale of the Guarantor Collateral to foreclose all of the Jeffrey Pink's rights therein and to apply the proceeds in the following order:

(a)   the costs of taking, keeping and selling the Guarantor Collateral;

(b)  the costs of suit and attorneys' fees incurred herein as may be awarded by the Court;

(c)  to satisfaction of damages and interest thereon under the Guaranty;

(d)  to the satisfaction of the indebtedness secured by any subordinate security interest in the Guarantor Collateral if written notification of demand is therefore received before distribution of the proceeds is completed; and

(e)  to Jeffrey Pink as to any surplus thereafter.

<u>SIXTH CLAIM FOR RELIEF</u>

12.  For an order of this court commanding Jeffrey Pink to give up and deliver possession of the Guarantor Collateral to plaintiff.

<u>SEVENTH CLAIM FOR RELIEF</u>

13.  For general damages in the sum of $4,798,128.96, plus interest thereon as provided under the Loan Agreement and Third Forbearance Agreement from May 30, 2009 at the rate of 4.75% per annum in excess of the Bank's Base Rate (as defined in the Loan Agreement), as the same changes from time to time, plus attorneys' fees and costs incurred herein;

14.  For punitive damages in the minimal amount of $1,000,000;

<u>EIGHTH CLAIM FOR RELIEF</u>

15.  For general damages in the sum of $4,798,128.96, plus interest thereon as provided under the Loan Agreement and Third Forbearance Agreement from May 30, 2009 at the rate of 4.75% per annum in excess of the Bank's Base Rate (as defined in the Loan

COMPLAINT

Agreement), as the same changes from time to time, plus attorneys' fees and costs incurred herein;

<u>ALL CLAIMS FOR RELIEF</u>

16.   For costs of suit incurred herein; and

17.   For such other and further relief as the Court deems just and proper.

Dated: May 28, 2009                    MONROE LAW GROUP


                                       By: <u>*/s/ James S. Monroe*</u>
                                           James S. Monroe
                                           Attorneys for Plaintiff
                                           AMALGAMATED BANK

COMPLAINT