James S. Monroe (SBN 102328)
jim@monroe-law.com
MONROE LAW GROUP
101 California Street, Suite 2450
San Francisco, CA 94111
Telephone: (415) 869-1575
Facsimile: (415) 723-7423

Attorneys for Plaintiff
AMALGAMATED BANK

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMALGAMATED BANK, a New York banking corporation,<br><br>              Plaintiff,<br><br>      v.<br><br>EV RENTAL CARS, LLC, a California limited liability company; JEFFREY S. PINK, aka JEFFREY PINK, an individual; LAURIE G. PINK, aka LAURIE PINK, an individual; and  LARRY JONATHAN PINK, aka LARRY PINK, an individual,<br><br>              Defendants. | No. CV09-3885 DSF (AJWx)<br><br>**RESPONSE OF PLAINTIFF AMALGAMATED BANK TO ORDER TO SHOW CAUSE RE DISMISSAL FOR LACK OF SUBJECT MATTER JURISDICTION** |

COMES NOW, Amalgamated Bank (the "Bank"), plaintiff herein, by and through its attorneys of record, and responds to the Order to Show Cause re Dismissal for Lack of Subject Matter Jurisdiction (the "OSC"), as follows:

### I.     INTRODUCTION AND SUMMARY OF ARGUMENT

The OSC requires the Bank to provide additional facts to support the allegations of the complaint that the Bank's principal place of business is in the State of New York and that the principal place of business of EV Rental Cars, LLC, a California limited

liability company ("EV Rental"), is in the State of California. The citizenship of the individual defendants (Jeffrey Pink, Laurie Pink, and Larry Pink, each of whom are longtime residents and domiciles of Los Angeles County, California) is not an issue. As demonstrated below, under the "total activities" test set out in *Industrial Tectonics, Inc. v. Aero Alloy* (9th Cir. 1990) 912 F2d 1090,1094, (i) the Bank's principal place of business is the State of New York since a substantial predominance of its corporate operations and all of its executive functions are performed there, and (ii) EV Rental's principal place of business is the State of California since the headquarters of EV Rental's sole member and corporate parent – EV Transportation, Inc., a Nevada corporation ("EV Transportation") (which is merely a holding company) – are located there. Moreover, even if the business operations of EV Rental are looked to in determining EV Transportation's principal place of business, the result is the same since a substantial predominance of EV Rental's business activity is centered in the State of California.

## II.    DISCUSSION

**A.    The Bank's Principal Place of Business is in New York.**

   **1.    Legal Framework.**

For diversity purposes, a corporation may have *dual* citizenship: "(A) corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." [28 USC § 1332(c)(1)].

Most courts now determine a corporation's principal place of business by examining the entity's "total activities," taking into account all aspects of the corporation's business, including where its operations are located, where it supervises that business and where it employs persons and conducts its business. [*Industrial Tectonics, Inc. v. Aero Alloy* (9th Cir. 1990) 912 F2d 1090, 1094; *Teal Energy USA, Inc. v. GT, Inc.* (5th Cir. 2004) 369 F3d 873, 876; *MacGinnitie v. Hobbs Group, LLC* (11th Cir. 2005) 420 F3d 1234, 1239]. The "total activities" test looks both to the

corporation's "nerve center" and to the "bulk" of its activities. When the corporation's activities are centralized in one state, it will be considered a citizen of that state. If, on the other hand, the corporation's activities are more dispersed, courts utilize the "nerve center" test to determine corporate citizenship. [*Gafford v. General Elec. Co.* (6th Cir. 1993) 997 F2d 150, 162; *R.G. Barry Corp. v. Mushroom Makers, Inc.* (2nd Cir. 1979) 612 F2d 651, 655]. For example, where the corporation's physical operations are predominantly in one state, that state will usually be considered its principal place of business, although its executive office is located elsewhere. [*Tosco Corp. v. Communities for a Better Environment* (9th Cir. 2001) 236 F3d 495, 496]

Whether a corporation's business activity in a given state "substantially predominates" requires comparison of its business activity in that state (number of employees, tangible property, production activity, sources of income, etc.) to its business activity in other individual states: "substantial predominance" requires only that the amount of the corporation's business activity in one state be significantly larger than any other state in which the corporation conducts business. [*Tosco Corp. v. Communities for a Better Environment*, supra, 236 F3d at 500.

**2.    The Bank's Business Activities are Predominately in New York.**

The Bank presently has 21 office and branch locations as follows: 15 in New York, 3 in Nevada, 1 in New Jersey, 1 in the District of Columbia, and 1 in California. Attached as Exhibit A to the Declaration of Lawrence D. Fruchtman filed in support hereof ("Fruchtman Declaration"), and incorporated herein by reference is a printout from the Bank's website containing a detailed listing of these office and branch locations with the exception of the new Roosevelt Island, New York branch which opened on July 20, 2009. [Fruchtman Dec. ¶ 3].

Attached as Exhibit B to the Fruchtman Declaration and incorporated herein by reference is the Bank's most recent Summary of Deposits filed with the Federal Deposit Insurance Corporation which shows the deposits maintained at each branch as

**RESPONSE OF PLAINTIFF TO OSC RE DISMISSAL FOR
LACK OF SUBJECT MATTER JURISDICTION**

of June 30, 2008, which is the most recent publically available data, and remains accurate in the sense that, as reflected in said report, the Bank's deposits are predominately from its New York City branches. [Fruchtman Dec. ¶ 4].

Presently, the Bank has approximately 525 employees, of which approximately 475 are employed in the State of New York and approximately 21 are employed in the State of Nevada, the next highest of the states where the Bank does business. [Fruchtman Dec. ¶ 5].

The Bank maintains its corporate headquarters at 275 Seventh Avenue, New York, NY 10001. [Fruchtman Dec. ¶ 6].

As set forth above and in the attached Exhibits, the Bank's business activity in New York in terms of the number of offices and branches, the number of employees, the amount of deposits and the amount of retail activity, is significantly larger than any other state in which the Bank does business. In addition the Bank's headquarters are located in the State of New York and the Bank is a banking corporation chartered under the laws of the State of New York.

Based upon the foregoing, the Bank's principal place of business is in New York under the "total activities" test.

**B.  EV Rental's Principal Place of Business is in California.**

   **1.   Legal Framework.**

EV Rental is a California limited liability company. The Ninth Circuit and every circuit that has addressed the question treats LLCs like partnerships for the purposes of diversity jurisdiction. [*See Johnson v. Columbia Properties Anchorage, LP* (9th Cir. 2006) 437 F3d 894, 899; *Gen. Tech.Applications, Inc. v. Exro Ltda,* 388 F.3d 114, 120 (4th Cir.2004); *GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc.,* 357 F.3d 827, 828-29 (8th Cir.2004); *Rolling Greens MHP, L.P. v. Comcast SCH Holdings LLC,* 374 F.3d 1020, 1022 (11th Cir.2004); *Handelsman v. Bedford Village Assocs. Ltd. P'ship,* 213 F.3d 48, 51 (2d Cir.2000); *Cosgrove v. Bartolotta,* 150 F.3d

-4-

729, 731 (7th Cir.1998)]. Therefore, the citizenship of an LLC for purposes of diversity jurisdiction is the citizenship of each of its members. Here, since EV Transportation is the 100% owner and sole member of EV Rental, EV Rental's citizenship for diversity purposes is determined by looking to the citizenship of EV Transportation.

**2.    EV Transportation is a Citizen of California and Nevada.**

As set forth in the Declaration of James S. Monroe filed in support hereof (the "Monroe Declaration"), in July 2008, as a condition to the "Third Forbearance Agreement" between the Bank and EV Rental, a true and correct copy of which is attached as Exhibit 13 of the complaint filed herein (the "Complaint"), EV Rental, which was and is a California limited liability company, by virtue of the merger of IMMS Acquisition, LLC, a California limited liability company and wholly owned subsidiary of IMMS, Inc., a Nevada corporation ("IMMS"), with and into EV Rental, became the wholly owned subsidiary of IMMS, a publicly traded shell corporation, and the pre-merger owners/members of EV Rental became shareholders of EV Transportation in exchange for their former limited liability company membership interests of EV Rental (the "Merger"). Immediately after the Merger, IMMS changed its name to EV Transportation. The foregoing is also confirmed by EV Transportation's Form 10-Q for the quarterly period ended September 30, 2008, which was filed with the United States Securities and Exchange Commission (the "SEC") on or about December 22, 2008, a true and correct copy of which (as downloaded from the SEC's official website maintained for such filings) is attached to the Monroe Declaration as Exhibit A and incorporated herein by this reference ("Form 10-Q"). This Form 10-Q is EV Transportation's most recent filing with the SEC. [Monroe Dec. ¶ 2].

As described in Form 10-Q (Exhibit A, page 12 (highlighted sections), simultaneously with the closing of the Merger, EV Transportation consummated an

agreement with one of its pre-Merger shareholders whereby said shareholder agreed to cancel all of his shares of common stock in EV Transportation in exchange for all of the pre-Merger assets and liabilities of EV Transportation. Accordingly, subsequent to the Merger, EV Transportation ceased any of its historical operations and became solely a holding company of EV Rental. [Monroe Dec. ¶ 3].

Before and after the Merger, EV Rental was in the business of renting environmentally sensitive vehicles, including hybrids, in California and Arizona. The business was conducted pursuant to an agreement with Fox Rent-a-Car, Inc. ("Fox"), pursuant to which EV Rental rented vehicles at Fox's six (6) airport locations in California and one (1) in Arizona. The vast majority of EV Rental's vehicles and employees were at the California locations. [Monroe Dec. ¶ 4].

At the time that the Third Forbearance Agreement was entered into in July 2008, EV Rental had approximately 220 remaining vehicles that had been financed by the Bank pursuant to the terms of the loan agreement which is the subject of the Complaint (the "Vehicles"). Pursuant to the Third Forbearance Agreement, EV Rental agreed to liquidate all of these vehicles by October 31, 2008. Ultimately, it was not until in or about January 2009 that all of the Vehicles were finally liquidated. The Bank is informed and believes that EV Rental has not obtained a replacement vehicle fleet and its business is presently inactive. [Monroe Dec. ¶¶ 5-6].

Since the Merger, EV Transportation and EV Rental have maintained their principal executive offices in Los Angeles, California. Until recently, at least, these offices were located at 5500 West Century Boulevard, Los Angeles, as also confirmed in the Form 10-Q. Based upon information recently provided by Jeffrey Pink, the Bank is informed and believes that these offices may recently have been moved to 2049 Century Park East, Los Angeles. [Monroe Dec. ¶ 7].

Based upon the foregoing, the citizenship for purposes of diversity jurisdiction of EV Transportation (and, thus, EV Rental) is both Nevada (its state of incorporation)

and California (where its "nerve center" is located). Since EV Transportation is merely a holding company for the business operated by EV Rental, its principal place of business should be determined by the location of its nerve center since it is not otherwise geographically bound. [*See, Peterson v. Cooley* (4th Cir. 1998) 142 F3d 181,184; *Naury Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.* (5th Cir. 1998) 138 F3d 160, 163-164]. Moreover, since an LLC is treated like a partnership for diversity jurisdiction purposes and the location of a partnership's business is irrelevant to subject matter jurisdiction (*See, Lincoln Property Co. v. Roche* (2005) 546 US 81, 83, 126 S.Ct. 606, 610, fn. 1), the same should apply with respect to the location of EV Rental's business here. However, even if the location of EV Rental's business were to be looked to in determining its principal place of business, it is clear that under the "total activities" test discussed above the answer would be the same since EV Rental's business activity clearly predominates in California (where it had/has 6 locations, and the majority of its vehicles, revenues and employees) as opposed to Arizona, the only other state where it did/does business (which had/has 1 location).

## III.  CONCLUSION

The Bank believes that the foregoing clearly establishes that diversity jurisdiction is present in this case as there is no question that the Bank is a citizen of the State of New York and that no defendant is a citizen thereof. However, if the court determines that additional evidence is necessary to establish subject matter jurisdiction in this case, the Bank respectfully requests a reasonable period of time to conduct discovery addressed to this jurisdictional issue.

Dated: July 21, 2009                                    MONROE LAW GROUP

                                                                            By: */s/ James S. Monroe*
                                                                                James S. Monroe
                                                                                Attorneys for Plaintiff
                                                                                AMALGAMATED BANK